Good morning, I'm Tad Turner here on behalf of the appellant. Gina Santangelo, the issue in this particular case is whether under California's delayed discovery rule in the statute of limitations context, the simple act of an 18-year-old girl retaining a lawyer after a car crash that resulted in the death of her mother and her brother constitutes as a matter of law suspicion, or the incentive to sue as described in the Ward opinion from the Ninth Circuit which cites Jolly, automatically triggers the statute of limitations beginning to run. In this particular case, the district court, the MDL court sitting in Indianapolis concluded that as a consequence of this fact alone, just the fact of retaining a lawyer triggered the statute of limitations in her context. Well, Mr. Turner, let's flesh that out. It's not only that Ms. Santangelo retained an attorney, but what did the attorney do? Well in the context of this particular case, the case is undisputed. You're on summary judgment, right? On summary judgment. Okay. On summary judgment. What did the attorney do? He went out and hired an expert, right? The attorney went out and hired a tire specialist to look at the tire, among other things. Among other things. Among other things. Well, correct. The other thing he did was he impounded the car and the tire. You are correct. He also did... And then the expert gave him a report, or at least gave him the information, that in his opinion the tire had come apart because of a defect. That's where the facts in this case diverge, because the tire specialist says later on down the road, I told the lawyer that I found evidence of a defect. The lawyer says that the expert, the tire specialist, told him I did not find anything to indicate a defect. And the facts also show that that lawyer, a year later, tells the insurance company that the investigation of the tire did not pan out. Let's say the lawyer is telling the absolute truth and the expert is absolutely in error. Would you take that as a given? In other words, that he was told it was not a case. Right. Okay. Now the lawyer suspected enough about the tire to go out and hire an expert and impound the car. Well, the lawyer... I wouldn't say that curiosity, looking at a factual scenario of a complicated rollover involving some people belted, some people not belted, with the tire failure is suspicion alone. The lawyer did what the lawyer should do, which is look at all avenues. Nygaard tells us, Norgaard tells us, that Discovery Doctrine postpones the accrual of the cause of action until the plaintiff discovers or has reason to discover the cause of action, which occurs, quote, when he has reason at least to suspect a factual basis for its elements. Now, when the lawyer impounded the tire in the car and when the lawyer got an expert to examine the tire, didn't he suspect that the tire had something to do with it? He had enough knowledge and experience to suspect that he needed somebody to look at it. Right. But the law of California... He was spending his own money with the expert having him look at the tire. Well, he ultimately didn't, but yes, he... That would have been... Maybe he didn't pay him, but that's all right. Absolutely. Absolutely. But that's where... So the lawyer suspects there's something wrong with the tire. Otherwise, he wouldn't get the expert, right? He gets him to find out whether there is. Let me ask you this. What knowledge of a lawyer... If the lawyer has knowledge, it's imputed to the client, right? That is correct. Okay. Here the lawyer... In some context, in this context, yes. There's some knowledge on the part of the lawyer that is not, under the law, imputed to the client. But I do concede that here, any knowledge about a defect would be imputed to her. All he had was a suspicion. All he had was what? A suspicion. He had a suspicion? Yeah. In other words, he had enough experience to know, I'm going to send this off to a tire specialist. Yeah. But he didn't have knowledge that the tire was defective until he heard from the expert. Is that right? That's wrong. No, you're wrong. I'm right. That's wrong factually. You're not listening to me. That's your problem, you know. That's wrong factually. He's trying to throw you a lifeline, man. You know, I mean, that's the way I analyze it. Now, it was the mother who was killed, right? Right, her mother. And it was the highway patrol that attributed the accident, in part at least, to her. To the mom. Because of her, the way she turned the wheel. The way she responded. She was negligent. Correct. Or maybe beyond that. Because we know if you have a problem with a tire, you just want to maintain a steady course. And so, is there any case in California that tells us that if the agent has a suspicion, a suspicion, there's a difference between suspicion and knowledge, isn't there? Absolutely. That's the critical point here. I mean, that works in Little Rock, too, doesn't it? It does. Okay. It does. So, is there any case that you know of that says that the suspicion of an agent, not knowledge, suspicion, he says he didn't even have it. He just sent it out, he had this suspicion, he got the report back that there was nothing wrong with it. That's what you just said, right? That's correct. Okay. So, he had a suspicion. I'm asking if there's a case that tells us this. You know, I've got a suspicion of a lot of things going on. The suspicion is attributable to the client. Knowledge is. No, sir. There's not one case. And that's where we disagreed with the district court in Indiana, was that the ward versus Westinghouse. And then you've also got a conflict on whether this expert told you that it was, you say he said it was okay, or he told the lawyer that, you know, there's no defect, and the expert apparently says, yeah, I told him there's a defect. But did the expert send a report to the lawyer and say there's a damn good defect? No, sir. So, it's one word against another. So, that is a disputed issue of fact. That is correct. It's critical. A critical disputed issue of fact. And the young lady said she had no knowledge of it. Oh, everybody concedes that Gina, an 18-year-old girl who's lost her mother and her son, never had any knowledge even that he sent the tire to a tire specialist. That is the undisputed evidence in the case. But that doesn't matter, does it? Because the lawyer's knowledge is the same as the plaintiff's. The lawyer's knowledge is, but not the lawyer's suspicion. Why do you say that? Because suspicion alone, I mean... Do you have a case that says suspicion is not imputed? I thought Lozarevic versus Lozarevic said... No, there's no case that says suspicion is. Oh, I see. So, your point is suspicion of the lawyer is not imputed to the client. Would you say the same thing if you were suing the lawyer for malpractice? If I was suing the lawyer for malpractice, I wouldn't be suing him for that. I would be suing him for losing the tire. That's what I would be suing him for, but not the suspicion. How about not filing a case in time? Well, that depends on the factual part of it. Since all you had was suspicion, I can't sue you because it's not below the standard of care to fail to sue somebody until you have knowledge. Suspicion isn't enough. You wouldn't say that, would you? Certainly not here on the record, you wouldn't say that. Not when you're thinking about suing that guy for not filing, right? But the problem that we have in this context is this word suspicion. Because suspicion in this context can be taken to an extreme. Because a lawyer has an obligation to look at various things. There's a suspicion of various things. This is a diversity case. It's what? It's a diversity case. Absolutely. California is the law, right? I read to you what Nygaard says. That this occurs when he has reason to at least suspect a factual basis for its elements. But if you take a look at your own court's ruling in Ward v. Westinghouse Kennedy. And this case, the Westinghouse Kennedy case, has to do with a Delta Airlines employee typing on the computer from 1979 to 1990. And he begins to suspect some things related to his job and his employment. And he learns, after the statute of limitations is run, that his particular issue is related to his computer. The computer people claim that the statute of limitations expired in that case. And this court, citing the Jolly decision from California, the California Supreme Court that established this discovery delay rule, used the following language to define what is meant by suspicion in this context. It's not just curiosity. It says, quote, once the plaintiff has a suspicion of wrongdoing, comma, and therefore an incentive to sue. It's not just a suspicion. It is factual information. It is a suspicion based upon factual information that gives her an incentive to sue. But first you've got to get the lawyer's suspicion. I suppose you can infer it from the fact that he had the entire exam. But you've got to get it attributed to this young lady. To the 18-year-old lady. That is correct. And there's nothing here that tells us that she had suspicion. Nothing. She needs the knowledge. Absolutely. Knowledge is imputed. There's no case that says suspicion is imputed. Or even curiosity. You know, I practice law. I had a lot of suspicions about this and that. Some panned out. Some didn't. You're not going to call your client and say, oh, I've got a suspicion about this. Anyway, she was his lawyer. And he was suing her carrier. Right? Where did the $100,000 come from? He was investigating all sources. That was the undertaking. Investigate all sources. He was her lawyer. And the recovery. He's got the report that the mom was negligent. The mother's insurance. The mother's insurance paid it. That is correct. He also had an accident report that said the California Highway Patrol mentioned tread separation as a reason for the accident. Yeah, but did you also notice the accident report says for unknown reasons? That's why he got the accident report. And even Firestone tells you. In fact, their position will be it is extremely rare. And it's extremely rare for there ever to be a tread separation that results from a defect in the tire. So, you know, if Firestone is going to try to claim that simply because there's a reference to a tread separation for unknown reasons in the accident report, that creates a suspicion of defect that's contrary to their own position. So you can't even impute that to her. There's nothing in the way of actual knowledge in this case in Gina, this 18-year-old's mind, or anything in her life. Because by this time, she has no parents alive. She had lost her father some eight years before or six years before. She's now lost her mother and her brother in a crash. She's 18 years old. She turns this over to her high school buddy, who turns it over to this other lawyer, Crookham, who Gina has never in her life met to this day. Never saw him. Never talked to him. Never heard any factual information whatsoever. Her first knowledge or suspicion of a claim or an incentive to sue is the recall of these very tires in August of 2000. That is the first time. Now, was there any evidence in the record that before the recall that Firestone publicly denied and sent out all kinds of reports and it was in the news that their product was a good product? Was there any campaign like that? Oh, absolutely. In fact, the record in this case is... Now, wouldn't that, wouldn't something like that, if you wanted to factor that into suspicion for a young person to, if they're even thinking about the tire, that would, all that advertising was put out there to tell people, nothing wrong with our tires, don't worry about them, they're good tires, stand behind them, and all that. So, you know, well... Well, not only... She doesn't know what's going on in the rest of the country. And even if she had some thought about suspicion, I suppose you could say that that would have been weakened by the advertising that went on on radio and TV and all that to tell people everything was all right. Well, and I think on that same point, I think it is compelling to remember that this record is not only full of what you just described, but that record from Firestone was so strong that it convinced even Ford Motor Company that there was nothing wrong with these tires until the recall. So consequently, if you can convince an expert like Ford Motor Company not to worry about, not to have a suspicion about these tires, the ordinary consumer, especially an 18-year-old with no living adult in her life to give her direction, is being held by this court in Indiana, Your Honor, to a standard that is just not reasonable and it's not fair and... Sorry, Judge, but there's disputed issues and... And that's it. That's it. Thank you. I reserve the balance of my time to these gentlemen. No, that means you've run over. Yeah, you've been run over. Thank you. Good morning, Your Honor. Arnold Larson for the respondent. I think we've gotten a little bit off track here, but this case is really not complicated. It's governed by the California Supreme Court decision in Fox v. Efficon Endosurgery, which explains the California Delayed Discovery Rule for statute of limitations. I'm just going to read two or three sentences from that, but they're directly relevant to this case, and it says that in order to employ the discovery rule to delay accrual of a cause of action, a potential plaintiff who suspects that an injury has been wrongfully caused must conduct a reasonable investigation of all potential causes of that injury. All potential causes of that injury. If such an investigation would have disclosed... Well, that's if there's a suspicion. Pardon me? That's if the plaintiff has a suspicion. It says, if such an investigation would have disclosed a factual basis for a cause of action, the statute of limitations begins to run on that cause of action when the investigation would have brought such information to light. That's at page 808-809. The would-have standard is not tied to what a particular plaintiff suspected. It's what a reasonable person, given the same factual information, would have suspected or should have discovered. A reasonable 18-year-old girl who was an orphan and all that. We're talking about that. Who suffers very bad injuries herself. In this particular case, the 18-year-old girl, Gina Santangelo, within days after the accident, retained an attorney who conducted an investigation, who pounded the vehicle, who obtained the California Highway Patrol report that reported that this accident was preceded by, precipitated by, a tire failure. But her boyfriend got the lawyer. She never met the lawyer. She was aware that she had a lawyer. She was aware she had a lawyer. And that lawyer, she was also aware from her own knowledge, she testified that her first knowledge that there was an accident about to occur was when she heard the sound of the tire failing. She heard slapping. Yes. Yeah. Which she interpreted to be a tire coming apart. That investigation, in fact, resulted in... Did she ever see the tire? Did she ever see the tire? Did she see the tire after the damage? Your Honor, I don't recall what... Did they have to bring one of those big jaws in there to extricate her from that vehicle? Am I wrong about that? I don't recall those facts. I'm sure that in the midst of the accident, her concern was not to inspect the tires. She may have seen them, she may have not. I'm not suggesting that that was an appropriate time for her to be inspecting the tires. My point, Your Honor, is this. That she had information that would put her on inquiry. She retained, or counsel was retained on her behalf who made the inquiry. That inquiry, in fact, if we were to believe the testimony, the sworn testimony of the tire expert that was retained for the plaintiff, that inquiry resulted in the discovery of what that expert believed to be a defect of the tire. But, I mean, seriously. Aren't these... They're disputed issues of fact. Why shouldn't they be resolved by a trier of the fact? They are not disputed issues of fact. When you have undisputed facts, facts that are not... Well, she is saying, she is saying, I believe, first of all, she has to have this suspicion. And so, the suspicion arises from the fact that her boyfriend got this lawyer, whom she never met until this day, and she said that she didn't know that the lawyer had the tires, the car impounded and the tires checked. The lawyer never told her that he'd done that. And then you've got the conflict between the lawyer and the expert. And what is there? Because she heard flopping? Is that the suspicion that's supposed to arise in her mind? She's supposed to then go ahead and get a lawyer and she suspects that all this occurred because of a defect in the vehicle. There are a number of questions there, and I would like to address each of them. But I want to take a step back first, because I think we're missing something here that's a key element. The law in California is that if she suspects any third person, not suspecting herself, and I'll just digress briefly to say that's why the Westinghouse keyboard case is inapplicable here. The law in California is that you suspect third-party wrongdoing. And in the Westinghouse keyboard case, the gentleman suspected himself. He suspected he spent too much time on his computer and he suspected no third-party wrongdoing, so it wasn't until later that he got into the design debate. It's clearly a distinguishable case, as are all the other cases like that. Here, it's undisputed that she, Jesus Sant'Angelo, suspected wrongdoing of the third party. They are contending she suspected wrongdoing only of her mother. But nevertheless, they concede that she suspected wrongdoing of the third party. Under the Fox, California Supreme Court decision, once you have that, you acquire a duty to conduct a reasonable, diligent investigation of all potential causes of that injury. She actually carried out that duty. It was an attorney retained, and I won't go through the details again. I think the court's familiar with them. But the evidence is, the undisputed evidence is, that the tires were impounded, inspected, the defect was discovered. Does she know all that? And it was discovered within three months of the accident. Whether she knew it or not is, I don't think, in dispute either, at least according to the record. I think the record is clear that the attorney, Crookham, says the expert, Baumgardner, told me he found no defect that caused the tire to fail. Presumably, Crookham carried out his duty to his client to report that back to her. And what he told her is, we're pursuing the case against your mother's insurance company. To say he is pursuing that case is not the same thing as saying I've investigated something else. There isn't anything in the record that says she was never told that they were investigating the tire. That she was never told that they suspected the tire. The only thing they put in the record, and I think it's been very artfully drafted, is a declaration about what claims were pursued. And understandably, if Crookham, the attorney, says the guy told me I found no defect that caused the tire to fail, then he didn't pursue that claim. But it was investigated. And a diligent investigation, presumably, would have discovered a basis to file suit within three months after the accident. Mr. Larson, may I interrupt you for just a second, taking up an observation made by Judge Ferguson? I take it the idea that an agent's knowledge is imputed to the principal is a basic concept of agency law. Now, do you have any cases that say that an agent's suspicion is equally imputed to a principal? There is a case that says... California law. You know, it's been some time since I've read the case. I don't recall whether or not the word suspicion is used in it. I know that the Santillan v. Roman Catholic Bishop of Fresno case, which is 163 Calat IV, page 4, pages 11 to 12, is a 2008 case. It has the quote in it regarding statute... regarding imputation of... Was that a child abuse case? Pardon me? Was that a child abuse case? You know, I don't recall. It's been some months since I looked at it. 161 Calat IV, is this cited in your brief? Pardon me? Is this cited in your brief? Yes, it is. It just says that the knowledge of certain facts will be imputed to a principal when determining when a statute of limitations begins to run. Now, that's knowledge of facts. That's knowledge, but there's... I mean, I've checked it out, and I haven't been able to find any case in California that's the only place I looked, was that suspicion can be imputed from an attorney to a client or even found one from an agent to a principal. I don't think we're really talking about suspicion here. She had knowledge. Knowledge. Actual knowledge of certain facts. She had knowledge that the accident was... But that's a question for the jury to decide. I mean, you're making inferences from certain facts that are out there. I mean, don't we have trials in this country anymore? We do. Not too many. Your Honor, it is a legal question what inferences are permissible to be drawn from the undisputed facts in this case and whether or not a diligent, reasonable, diligent investigation of the known facts would have or should have resulted in this lawsuit being filed within the applicable statute of limitations. If we're going to go to a rule where people can say my attorney had all the information but didn't file suit... Let's take a look at the facts that the attorney knew. The attorney knew that there was a California Highway Patrol report. That said that this tire was separated for, quote, unknown causes. Right? Yes. The attorney knew that there had been a rollover. And the attorney knew where to find a tire expert, which was Baumgartner. And he knew that Baumgartner was a tire expert, right? Yes, he actually got the name of the two tire experts and he selected Baumgartner. So at that point he knew that the tire may have played a role in this accident. Right? Yes. So those are the facts which you want imputed to St. Angelo. Those facts. And a duty to investigate, I think, arises from those facts as to whether or not the failure of the tire is caused by wrongdoing of the third party. She also clearly has testified, it's in the record, that she suspected wrongdoing in the handling of the vehicle in response to the tire failure by her mother. Even if she had known nothing about the tire, that alone triggers an obligation to investigate all potential plaintiffs. But, you know, I'm just talking. You know, if that's true, that would require the attorney to be constantly calling the client, saying, I'm doing this, I'm doing that, report every move they make about their suspicions about this and that, where the statute says and the cases talk about knowledge. I mean, I dealt with a lot of cases. I had certain theories and suspicions and all that, but some panned out. One, I had a pretty good idea, but I was naive and I believed everything I read in the insurance policy. Your Honor, it's not about suspicions. It's about a duty to investigate and what a reasonable investigation would discover. She's an 18-year-old girl. What does she know about what a reasonable investigation would discover? She knows she's got a lawyer, and if the lawyer has knowledge, it's attributable to her. We do that because he's the one that's carrying the burden to see that her case is properly dealt with. Don't turn it over to her. And he's reported to her that there's no defect. And the report from the highway patrol indicated that unknown causes or whatever the language was, I've got it here, and the report also talks about the mother being negligent. She didn't drive properly. You know, she changed lanes abruptly and lost control of the car and went off in the desert. I think, Your Honor, that the highway patrol report that you've made reference to multiple times firmly establishes that Gina Santanaro had reasonable to suspect wrongdoing on the part of a third party. In this case, you are pointing to her mother. That, under the California Supreme Court decision, triggers a duty to investigate all potential causes of action. She did so, in this instance, by hiring an attorney. The attorney, in turn, hired an expert. And they had knowledge... Well, the expert told the attorney there's no defect. That is what the attorney says. And the expert says there are. There alone, you've got that big dispute of an important fact, material issue of fact. Well, no, because the question is whether or not a diligent inquiry would have disclosed sufficient facts upon which to bring a cause of action within the 1-year statute of limitations. Mr. Baumgartner says he told them of the defect. He says he took photographs of the tire which were saved. That's all we have is his photographs. Now, he didn't photograph the inside of the tire, but he did photograph the exterior. He says, and experts that they retain subsequently say, that you can look at these photographs and see a defect, manufacturing defect. They have an expert now who says that. So Crookham had the... And Baumgartner says he suggested, I won't write a report because I find no defect and that will be harmful to your case, but you can go to another expert and maybe you'll get a different opinion. And at that point, he had another 9 months to do so. This case is barred by the statute of limitations. There was an opportunity to conduct an investigation. They did conduct an investigation. They were focused on the tire and they just didn't file a lawsuit. Now, they subsequently made a claim against Mr. Crookham, the attorney, as your honors were exploring. And they made claims against us. They made claims against the vehicle. And they made claims against the mother's policy. But one thing was clear when this accident happened. Gina first awoke and she knew she was about to be in an accident. And that was, as she testified, I heard the sound, thought a tire was failing, and she then, you know, subsequently learned that indeed the accident was precipitated by a tire failing. What did she say? She heard a plopping noise? I believe what she probably heard was the sound of the tread hitting the ground. That's not what you believe. Let me ask you a question. You have some uncontroverted facts in the trial court, right? Statement of uncontroverted facts. Which of those facts were denied by the plaintiff? Was fact number 5 denied? On May 11, 1998, during the accident, plaintiff Gina Santangelo heard a loud noise which sounded like and which she believed was a tire blowout. Was that denied? That's not a denied fact. That was the fact that was admitted before the trial court, right? Yes. That's undisputed. Any other of those facts in the undisputed facts that were denied by the plaintiff that you can remember? I don't believe any of those facts were disputed. Thank you. I want to ask that of you, Mr. Turner, when you come up for your rebuttal. Don't get the impression you've still got three minutes because you're over the line. All right. I'll reserve the rest of my time. No, you don't have any time to reserve. You're overdrawn. Oh, I see. I'm three over. Four over. Thank you. Just very briefly, with respect to the first issue, which we've been focusing on, and that is the imputation of suspicion. If you look at the first issue, you'll see that the plaintiff, the case is Nelson v. Indias Pharmaceuticals, 142 Calat 4th, 1202 at page 1206, where the following quote is included. And we do not believe that to be the law. It goes on to say, which is what he's talking about, That is actual knowledge, not imputed knowledge. Is this case cited in your brief? It absolutely is. Page 9 of the brief. It's Nelson v. Indias Pharmaceuticals, 142 Calat 4th, 1202 at 1206. And it also goes on to say, and this is consistent with the Nelson case, It says, So you can't use what they are trying to use to impute suspicion to Gina, an 18-year-old. Let me ask you this next question. Yes, sir. With respect to the separate statement of uncontroverted facts and conclusions of the law, do you agree with Mr. Larson that at the trial court you did not dispute any of these statements? I don't think that's accurate. I think there were like 42, and I think we disputed five or six of them, and we added some that we felt needed to be duped. There were 24. 24. And then we added some, and we disputed some, and then they responded. So I'd have to take a look at the record to find out which ones are undisputed. Yes, sir. Thank you. Yes, sir. That's all. Thank you very much. You're both very good lawyers. Pleasure to have you. Is this from Little Rock? Yes, Little Rock. What are you smiling about? He loves being here. I knew one person over there. Sid McMaster. What? He's a Marine Corps General. Absolutely. Is that it? Time flies when you're having fun. Okay, thanks. We'll recess until 9 a.m. tomorrow morning. He just died about three years ago. There's a book about by Sid McMaster. He practiced law within the woods. I saw him that day. It's part of the session, sir. Yeah.
judges: Pratt, Pregerson, Bea